**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JANET K. JOHNSON,**

      **Plaintiff,**

                                          **Civil Action 2:17-cv-915**

      **v.**                             **Chief Magistrate Judge Elizabeth P. Deavers**

**SECRETARY OF VETERANS AFFAIRS,**

      **Defendant.**

**<u>OPINION AND ORDER</u>**

Proceeding without the assistance of counsel, Plaintiff Janet K. Johnson initiated this lawsuit against the Secretary of the United States Department of Veterans Affairs.  This case is related to Plaintiff's earlier complaint before the Equal Employment Opportunity Commission ("EEOC"), VA Case No. 200H-0757-2015101526, EEOC No. 532-2016-00060X (the "EEOC Complaint").

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.  With the consent of the parties to the jurisdiction of the United States Magistrate Judge (ECF No. 16), 28 U.S.C. § 636(c), this matter is before the Court for consideration of Defendants' Motion to Dismiss for Plaintiff's Failure to Prosecute (ECF No. 40) and Defendant's Motion for Summary Judgment (ECF No. 45).  For the reasons that follow, Defendant's Motion to Dismiss for Plaintiff's Failure to Prosecute (ECF No. 40) is **DENIED AS MOOT** and Defendant's Motion for Summary Judgment (ECF No. 45) is **GRANTED**.

1

# I. FACTUAL BACKGROUND

Plaintiff's Complaint does not expressly set forth any causes of action, and instead only consists of the following eleven factual allegations regarding events that allegedly took place between December 23, 2014 and June 26, 2015:

1. On December 23, 2014, Lloyd McNutt, (LM), Supervisory Medical Support Assistant, [Plaintiff's] supervisor, performed a fact-finding with [Plaintiff] and badgered her with repeated questions.

2. On December 24, 2014, LM performed a fact-finding with [Plaintiff], appointed [Plaintiff's] union representative without her approval, and refused to provide her with a copy of the report of the incident in question.

3. On January 5, 2015, LM issued [Plaintiff] a proposed reprimand.

4. On January 22, 2015, LM issued [Plaintiff] a reprimand.

5. On or about February 3, 2015, Carolyn Park, Lead Medical Support Assistant at the direction of LM, placed a post-it note on [Plaintiff's] desk ordering her to remove a patient-related sign that had been in place on a white Medical Support Assistant's desk since 2013.

6. On February 25, 2015, LM denied [Plaintiff's] annual leave request and charged her with four hours of AWOL.

7. On May 4, 2015, LM informed [Plaintiff] that she was being scheduled for a fact-finding interview for May 6, 2015.

8. On May 7, 2015, Dr. Edward Bope, Chief Primary Care, issued [Plaintiff] a proposed five-day suspension for disrespectful conduct towards a patient.

9. On May 27, 2015, Dr. Mark Cooperman, Chief of Staff[,] issued [Plaintiff] a 3-day suspension, effective June 9 through June 11, 2015.

10. On June 22, 2015, LM requested that [Plaintiff] provide a doctor's excuse because she had taken sick leave for a third day. [Plaintiff] contends that she reported the matter to the union[.] The Union Master Agreement supports [Plaintiff]. [Plaintiff] contends that this was not an error but rather another opportunity to harass her.

11. On June 26, 2015, LM issued [Plaintiff] a letter of written counseling for failure to follow instructions. [Plaintiff] explained that the letter stated that the written counseling was not a disciplinary action but that the next time an incident happens she would be removed from service.

(Complaint, ECF No. 4.)  These allegations require additional context in order to understand Plaintiff's claims.  Defendant submits that Plaintiff's Complaint ought to be considered in the context of the Department of Veterans Affairs Office of Employment Discrimination Complaint Adjudication's Final Agency Decision ("FAD"), dated July 19, 2017, related to Plaintiff's EEOC Complaint, in order to fully appreciate the underlying facts of this case.  (ECF No. 45 at PAGEID # 217.)  This Court agrees, and therefore relies on both the Complaint and the FAD (ECF No. 45-1) to set forth below the factual and legal context for the allegations in Plaintiff's Complaint.  Plaintiff's discovery responses (ECF Nos. 23-24) and her deposition transcript (ECF No. 46-1) also provide additional background.

Plaintiff worked for the United States Department of Veterans Affairs (the "VA"), in the Primary Care area of the Ambulatory Care Center in Columbus, beginning in December 2004. (*See* FAD, ECF No. 45-1, at PAGEID # 254; Johnson Dep., ECF No. 46-1, at PAGEID # 425 (18:2-7).)  On February 26, 2015, Plaintiff filed her EEOC Complaint, alleging that VA officials at the Ambulatory Care Center had discriminated against her.  (FAC, ECF No. 45-1, at PAGEID # 253.)  Specifically, Plaintiff alleged that (1) she had been subjected to disparate treatment based on race (she is African American), sex (she is female), reprisal (she had prior EEOC activity), and age (she was approximately 55 at the time of the EEOC Complaint); and (2) she had been subjected to a hostile work environment based on her race, sex, reprisal status, and age. (*Id.* at PAGEID # 254.)

Plaintiff's EEOC Complaint, as amended, alleged discrimination arising out of a series of events between December 23, 2014 and June 26, 2015.  (*Id.* at PAGEID ## 254-261.)  Plaintiff's Complaint in this action concerns these same events.  First, on December 23, 2014, Plaintiff's former supervisor Lloyd McNutt notified her that she was being investigated for being rude to a

patient. (*See* Complaint, ECF No. 4, at ¶ 1; *see also* Plaintiff's Responses to First Set of Interrogatories to Plaintiff Janet K. Johnson (the "Interrogatory Responses"), ECF No. 23, at Answer No. 9.) Plaintiff denied that she had been rude to a patient, and claims Mr. McNutt "reportedly called and badgered the patient for some kind of statement and embellished the report to get [Plaintiff] in trouble." (*Compare* Complaint, ECF No. 4, at ¶ 1, *with* Interrogatory Responses, ECF No. 23, at Answer Nos. 9 and 17; *see also* Johnson Dep., ECF No. 46-1, at PAGEID # 432 (46:17-48:1).) Second, on or about February 3, 2015, a white coworker named Carolyn Park placed a post-it note on Plaintiff's desk asking Plaintiff to remove a sign from her desk. (*Compare* Complaint, ECF No. 4, at ¶ 5, *with* Interrogatory Responses, ECF No. 23, at Answer No. 10.) Plaintiff felt she was the victim of a double standard, as "[t]he exact sign . . . was on a desk of a coworker (white lady)" and "[t]his sign had been placed there by [the other coworker] for several years and no one had ever complained about the sign." (*Id.*) As a result, Plaintiff felt she "was not treated like ALL the white people on [her] team." (Interrogatory Responses, ECF No. 23, at Answer No. 12.) At deposition, however, Plaintiff admitted that another white coworker also was asked to remove the same sign from her desk. (*See* Johnson Dep., ECF No. 46-1, at PAGEID # 437 (65:4-67:7).)

Then, on February 25, 2015, Mr. McNutt denied Plaintiff's annual leave request and charged her four hours of pay. (*Compare* Complaint, ECF No. 4, at ¶ 6, *with* Interrogatory Responses, ECF No. 23, at Answer No. 15.) Plaintiff had requested leave "due to family matters," but Mr. McNutt "did not ask what the problems/family matters were" and charged Plaintiff for Leave Without Pay. (Interrogatory Responses, ECF No. 23, at Answer No. 15; *see also* Johnson Dep., ECF No. 46-1, at PAGEID # 439 (75:20-76:4).) Plaintiff filed her EEOC Complaint the next day.

In May 2015, after an internal investigation, Plaintiff was issued a three-day suspension "for disrespectful conduct towards a patient." (Complaint, ECF No. 4, at ¶¶ 8-9; *see also* Interrogatory Responses, ECF No. 23, at Answer No. 19.) After serving the suspension in June 2015, Plaintiff took an additional three days off work due to illness. (Interrogatory Responses, ECF No. 23, at Answer No. 19.) Upon arriving back to work after her illness, Mr. McNutt "requested that [Plaintiff] complete a leave slip," which was not the proper protocol because Plaintiff had not taken four or more days off work due to illness. (*Compare* Complaint, ECF No. 4, at ¶ 10, *with* Interrogatory Responses, ECF No. 23, at Answer No. 19.) Finally, on June 26, 2015, Mr. McNutt provided Plaintiff with a written counseling letter, informing her that she had failed to follow instructions and warning her that the next time an incident happened she would be removed from service. (Complaint, ECF No. 4, at ¶ 11.) Plaintiff ultimately resigned from the VA on April 13, 2016. (Johnson Dep., ECF No. 46-1, at PAGEID ## 446-447 (103:17-105:21).)

The EEOC investigated Plaintiff's claims, and on July 19, 2017, Maxanne R. Witkin, Director of the VA's Office of Employment Discrimination Complaint Adjudication, issued the FAD, concluding that Plaintiff "fail[ed] to demonstrate that she was subjected to discrimination or retaliation with regard to the matters raised in this complaint." (FAD, ECF No. 45-1, at PAGEID # 267.) The FAD advised Plaintiff that she "ha[d] the right to file a civil action in an appropriate United States District Court … within 90 days.["] (*Id.* at PAGEID # 268.) Approximately three months later, on October 20, 2017, Plaintiff initiated the subject action *pro se*.

This Court finds that Plaintiff's claims in this action mirror her claims from the EEOC Complaint, except for one allegation in the EEOC Complaint that Plaintiff does not allege in the

subject Complaint. (*Compare* Complaint, ECF No. 4, *with* FAD, ECF No. 45-1, at PAGEID # 259 (describing event on May 18, 2015).) Therefore, in the absence of any evidence (or explanation from Plaintiff) to the contrary, the Court construes Plaintiff's Complaint to seek relief under Title VII for (1) disparate treatment, and (2) a hostile work environment, based on Plaintiff's race, sex, reprisal status, and/or age.

## II. PROCEDURAL BACKGROUND

Plaintiff filed suit on October 20, 2017. (ECF No. 1.) On December 22, 2017, the Court declined to appoint counsel to Plaintiff. (ECF No. 7.) On January 16, 2020, Defendant filed a Motion to Dismiss for Lack of Prosecution. (ECF No. 40.) Plaintiff responded to the Motion to Dismiss for Lack of Prosecution on February 6, 2020 (ECF No. 43), and Defendant never filed a reply brief.

Defendant filed a Motion for Summary Judgment on February 24, 2020. (ECF No. 45.) On March 19, 2020, the Court granted Plaintiff until April 20, 2020 to file a response in opposition to the Motion. (ECF No. 50.) On April 20, 2020, Plaintiff filed a one-page letter to the Court about her January 24, 2020 deposition. (ECF No. 51.) Then, on May 5, 2020, the Court directed Plaintiff to file a response in opposition by May 19, 2020, and cautioned Plaintiff that "[i]f nothing is filed by this deadline, the Court will construe Plaintiff's letter (ECF No. 51) as her response." (ECF No. 52.) On May 21, 2020, the Court granted Plaintiff until June 18, 2020 to file a response in opposition. (ECF No. 54.) On June 17, 2020, Plaintiff filed a document entitled "Closing Arguments." (ECF No. 55.) In the absence of any formal response in opposition, and mindful of Plaintiff's *pro se* status, the Court construes both of Plaintiff's

filings, ECF Nos. 51 and 55, collectively to constitute her response in opposition to the Motion for Summary Judgment.[1]

### III.    STANDARD OF REVIEW

Pending before the Court are Defendant's Motion to Dismiss for Plaintiff's Failure to Prosecute (ECF No. 40) and Defendant's Motion for Summary Judgment (ECF No. 45). Although this case arises from an administrative proceeding and the Court has relied on the FAD to help set forth the material facts above, any prior administrative findings are not preclusive here, and Plaintiff is "entitled to a trial *de novo* in federal court on her Title VII claim." *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 795 (1986). However, an administrative "decision may be admitted as evidence and accorded such weight as the Court deems appropriate." *Abrams v. Johnson*, 534 F.2d 1226, 1228 (6th Cir. 1976).

The Court's inherent authority to dismiss a plaintiff's action because of his or her failure to prosecute is expressly recognized in Rule 41(b), which authorizes involuntary dismissal for failure to prosecute or to comply with rules of procedure or court orders. *See* Fed. R. Civ. P. 41(b); *Chambers v. Nasco, Inc.*, 501 U.S. 32, 49 (1991) (noting that "a federal district court has the inherent power to dismiss a case *sua sponte* for failure to prosecute" as recognized in *Link v. Walbash R. Co.*, 370 U.S. 626, 629–32 (1962)). "This measure is available to the district court as a tool to effect management of its docket and avoidance of unnecessary burdens on the tax-supported courts and opposing parties." *Knoll v. AT&T*, 176 F.3d 359, 363 (6th Cir. 1999).

---

[1] Due to Plaintiff's *pro se* status, this Court declines to analyze whether Plaintiff has abandoned her claims by failing to address the substance of Defendant's Motion for Summary Judgment, an issue that has been thoroughly explored in this Circuit. *See, e.g., Tonkovich v. Gulfport Energy Corp.*, No. 2:12-CV-38, 2012 WL 6728348, at *2 (S.D. Ohio Dec. 28, 2012) (collecting cases).

The Sixth Circuit directs the district courts to consider the following four factors in deciding whether to dismiss an action for failure to prosecute under Rule 41(b):

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008) (*citing K*noll, 176 F.3d at 363). "Although typically none of the factors is outcome dispositive, . . . a case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct." *Id.*

Generally, "[c]ourts must apply 'less stringent standards' to *pro se* litigants." *Tower v. RoseDog Books*, No. 2:15-CV-2405, 2019 WL 917174, at *3 (S.D. Ohio Feb. 25, 2019) (citing *Estell v. Gambel*, 429 U.S. 97, 106 (1976)). But "the lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)). On certain matters, "there is no basis for treating [a *pro se* litigant] more generously than a represented litigant," including "an easily understood court-imposed deadline." *Pilgrim*, 92 F.3d at 416.

Further, under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

8

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495–96 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation and citations omitted).

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23) Finally, "[a] *pro se* litigant has the same duties as any other litigant on a summary judgment motion." *Qixin Sun v. Dep't of Veterans Affairs*, No. 2:17-CV-1039, 2019 WL 6682158, at *8 (S.D. Ohio Dec. 6, 2019) (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)).

## IV.    ANALYSIS

This Court will address the pending Motion for Summary Judgment (ECF No. 45) first, as it concerns the merits of Plaintiff's Complaint. As discussed, the Court construes Plaintiff's

Complaint to set forth two causes of action under Title VII: (1) discrimination, and (2) hostile work environment. This Court will consider each in turn.

A.     **Plaintiff's Discrimination Claims.**

As the FAD makes clear, Plaintiff has claimed that she "was subjected to disparate treatment based on race (African American), sex (female), reprisal (prior EEO activity) and age (YOB: 1960)" on multiple occasions between January 22, 2015 and June 26, 2015. (*See* FAD, ECF No. 45-1, at PAGEID # 254).

Each of these types of discrimination implicates a different protected trait. While the elements of the claims differ slightly, "[l]iability in a disparate treatment case depends on whether the protected trait actually motivated the employer's decision." *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) (citing *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–56 (1981); *Hazen Paper Co. v. Biggins,* 507 U.S. 604 (1993); *Abbott v. Federal Forge, Inc.,* 912 F.2d 867, 871 (6th Cir. 1990)). "Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment . . . ." *Hartsel*, 87 F.3d at 800 (citing *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n.15 (1977)).

Against that backdrop, the Court now turns to each of the four types of alleged discrimination to determine whether Plaintiff's claims can survive summary judgment. The first two types of discrimination, racial discrimination and sex discrimination, require substantially similar elements to set forth a prima face case, so they are discussed together. The other two types of discrimination, age discrimination and reprisal discrimination, each have unique elements required to set forth a prima facie case, so they are each analyzed separately.

10

### 1.    Racial Discrimination and Sex Discrimination.

Plaintiff can establish a claim of discrimination under Title VII "either by introducing direct evidence of discrimination, or by proving circumstantial evidence which would support an inference of discrimination."  *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). Here, because the Complaint provides no direct evidence of racial discrimination, The Court will analyze the claims under the three-part *McDonnell Douglas* burden-shifting scheme.  *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) ("Absent direct evidence of discrimination, claims brought pursuant to Title VII's antidiscrimination provision . . . are subject to the tripartite burden-shifting framework first announced by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and subsequently modified in *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.E.2d 207 (1981).").

Under the first step of this framework, Plaintiff must establish a prima facie case of discrimination, typically by showing that she "(1) belonged to a protected class, (2) was qualified for the job at issue, (3) suffered an adverse-employment action, and (4) was either replaced by a person outside of [her] protected class or treated differently from similarly situated individuals." *Harper v. City of Cleveland*, 781 F. App'x 389, 393 (6th Cir. 2019) (citing *Peeples v. City of Detroit*, 891 F.3d 622, 634 (6th Cir. 2018)).  Next, "[i]f the employee establishes a prima facie case, then the burden shifts to the defendant at the second step 'to articulate a legitimate, nondiscriminatory reason for taking the challenged employment action.'"  *Harper*, 781 F.App'x at 393 (citing *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008)).  Finally, "[a]t the third step, the burden shifts back to the employee to show that the proffered nondiscriminatory reason was in fact a pretext designed to mask unlawful discrimination.  He or she may do this by

showing that the proffered reason '(1) has no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse action.'" *Harper*, 781 F. App'x at 393 (citing *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009)). "Importantly, at the summary judgment stage of litigation, courts should not allow 'th[is] burden-shifting analysis [to] obfuscate the appropriate question—whether there exists a genuine issue of material fact.'" *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016) (citing *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011); *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 661 (6th Cir. 2000) ("On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry.")).

Here, Defendant does not contest that Plaintiff has established that she (1) belonged to protected classes; (2) was qualified for her job; or (3) suffered an adverse employment action. (*See generally* ECF 45.) Rather, Defendant argues, "Plaintiff does not and cannot identify 'similarly situated non-protected employees [who] were treated more favorably.'" (*Id.* at PAGEID # 235.) In support, Defendant points to Plaintiff's own admissions that a white, female coworker was treated similarly to Plaintiff, and that Mr. McNutt did not discriminate against a black, male coworker. (*Id.* at PAGEID # 236.) Defendant also cites sworn testimony of Ms. Carolyn Park, who stated that Plaintiff's race, age, gender, or reprisal traits were "not at all" factors in Ms. Park's request for Plaintiff to remove the sign from her desk, and that Ms. Park "would not ask [Plaintiff] to take [the sign] off and then not ask [Plaintiff's white coworker] to take hers down." (Park Examination Testimony, ECF No. 45-8, at PAGEID ## 376-377 (7:9-8:8).) Finally, Defendant relies on testimony that another of Plaintiff's coworkers, a white male,

also was reprimanded with an identical three-day suspension. (Cooperman Examination Testimony, ECF No. 45-7, at PAGEID # 367 (13:8-20).)

The Court finds that Plaintiff cannot establish a prima facie case of racial or sex discrimination. As a result, Plaintiff's claims fail at the first step in the *McDonnell Douglas* analysis. Plaintiff argues in her "Closing Arguments," ECF No. 55, that "[t]hey practiced institutionalized racism" at the VA while she was employed there, but has failed to submit any evidence supporting her position. *See Lee*, 432 F. App'x at 441 ("The nonmovant must … 'do more than simply show that there is some metaphysical doubt as to the material facts,'. . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a 'genuine' dispute.") (citations omitted). If anything, Plaintiff's deposition testimony only supports Defendant's position, as Plaintiff testified that (1) Mr. McNutt "never said anything racial" and she never "hear[d] any words disparaging [her] race while [she] was employed" at the VA; and (2) she never "hear[d] anything directed at [her] gender" from her coworkers or anyone in her chain of command at the VA. (*See* Johnson Dep., ECF No. 46-1, at PAGEID # 444 (93:11, 94:21-95:8; 96:5-10).)

This Court affords Plaintiff all reasonable inferences, and construes the evidence in the light most favorable to her. Here, however, Plaintiff "has offered nothing" to rebut Defendant's evidence "other than bare denials and her subjective beliefs," both of which are insufficient to survive summary judgment. *Coulter v. Deloitte Consulting, L.L.C.*, 79 F. App'x 864, 868 (6th Cir. 2003). Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's racial discrimination and sex discrimination claims.

## 2.    Age Discrimination.

Title VII does not expressly prohibit discrimination based on age, but discrimination against persons forty years of age and over is prohibited by the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 663a, as amended ("ADEA").  "Generally, discrimination claims brought under Title VII and the ADEA are analyzed under the same framework."  *Deleon v. Kalamazoo Cty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014) (citing *Policastro v. Northwest Airlines, Inc.,* 297 F.3d 535, 538 (6th Cir. 2002)).

As with racial discrimination and sex discrimination claims, "[w]hen a plaintiff uses indirect evidence to support a claim under . . . the ADEA . . . the *McDonnell Douglas* burden-shifting framework applies."  *Stokes v. Detroit Pub. Sch.*, 807 F. App'x 493, 499–500 (6th Cir. 2020), *reh'g denied* (Apr. 16, 2020) (citing *McDonnell Douglas*, 411 U.S. 792; *Geiger v. Tower Auto.*, 579 F.3d 614, 622, 626 (6th Cir. 2009) (applying *McDonnell Douglas* in the ADEA and ELCRA context)).  Therefore, "[i]n order to establish a prima facie case of age discrimination using circumstantial evidence under the *McDonnell Douglas* framework, [Plaintiff] must show that: (1) [s]he is a member of the protected class, that is, [s]he is at least forty years of age; (2) [s]he was subjected to an adverse employment action; (3) [s]he was qualified for the position; and (4) [s]he was treated differently from similarly situated employees outside the protected class."  *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004).  "In age discrimination cases, the protected class includes all workers at least 40 years old and the fourth element is modified to require replacement not by a person outside the protected class, but merely replacement by a significantly younger person."  *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003) (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 342 (6th Cir. 1997); *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311-313 (1996)).

"To prevail on a claim under the ADEA, it is not sufficient for the plaintiff to show that age was a motivating factor in the adverse action; rather, the ADEA's 'because of' language requires that a plaintiff 'prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision.'" *Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 529 (6th Cir. 2014) (citations omitted). "For an employer to take an adverse action because of age means that age was the reason that the employer decided to act.'" *Id.* (internal quotation omitted).

Defendant argues that "Plaintiff's allegation of discrimination because of her age has no basis in fact," because "Plaintiff cannot rebut the evidence that Defendant[] did not know her age upon making the decisions and/or taking the actions for which she complains." (ECF No. 45 at PAGEID # 238.) In support, Defendant cites testimony from Mr. McNutt, Dr. Cooperman, Dr. Bope, and Ms. Park, each stating they did not know Plaintiff's age. (*Id.*, citing McNutt Examination Testimony, ECF No. 45-5 at PAGEID # 323 (5:3-4); Cooperman Examination Testimony, ECF No. 45-7, at PAGEID # 359 (5:17-19); Bope Examination Testimony, ECF No. 45-6, at PAGEID # 352 (9:4-5); Park Examination Testimony, ECF No. 45-8, at PAGEID # 375 (6:20-21).)

Plaintiff has not submitted any evidence to create a genuine issue of material fact on this dispositive issue. Plaintiff's letter to the Court, ECF No. 51, and Plaintiff's "Closing Arguments," ECF No. 55, do not even address Plaintiff's allegation of age discrimination, let alone rebut Defendant's evidence. Finally, when the issue came up during her deposition, Plaintiff testified that she did not believe she was "treated [] differently, because of [her] age," either by Mr. McNutt or by anyone in her chain of command at the VA. (*See* Johnson Dep., ECF No. 46-1, at PAGEID # 444 (95:9-96:4).)

Again, the Court affords Plaintiff all reasonable inferences, and construes the evidence in the light most favorable to her, but Plaintiff again "has offered nothing" to rebut Defendant's evidence "other than bare denials and her subjective beliefs," both of which are insufficient to survive summary judgment. *Coulter*, 79 F. App'x at 868. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's age discrimination claim.

### 3. Reprisal Discrimination/Retaliation.

Title VII prohibits employers from retaliating against an employee because of the employee's prior engagement in protected activity. *See Robinson v. MGM Grand Detroit, LLC*, No. 19-2101, 2020 WL 4283961, at *7 (6th Cir. July 27, 2020) ("Title VII prohibits an employer from retaliating against an employee who has either: (1) opposed any practice made an unlawful employment practice by this subchapter, or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.") (internal quotation and citation omitted); *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 613 (6th Cir. 2019) ("In addition to prohibiting discrimination, Title VII prohibits retaliation against an employee for engaging in conduct protected by Title VII.") (citation omitted).

"A prima facie claim of Title VII retaliation requires a plaintiff to prove that '(1) she engaged in a protected activity; (2) her exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action.'" *Ward v. Sevier Cty. Gov't,* No. 3:18-CV-113, 2020 WL 889159, at *9 (E.D. Tenn. Feb. 24, 2020) (quoting *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 568 (6th Cir. 2019)). Unlike Plaintiff's other discrimination claims, "retaliation claims 'must be proved according to traditional principles of but-for causation,' which 'requires proof that the unlawful retaliation

would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Id.* at *10 (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 731 (6th Cir. 2014)). "To establish the causal connection that the fourth prong requires, the plaintiff must produce sufficient evidence from which one could draw an inference that the employer would not have taken the adverse action against the plaintiff had the plaintiff not engaged in activity that Title VII protects." *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 543 (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000); *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 861 (6th Cir. 1997) (holding that a plaintiff need only present "sufficient evidence to raise the inference that her protected activity was the likely reason for the adverse action" to establish the causation element) (internal quotation omitted)).

Here, Defendant does not contest that Plaintiff has established that (1) she engaged in activity that Title VII protects; 2) Defendant knew that she engaged in this protected activity; 3) Defendant subsequently took an employment action adverse to Plaintiff. (*See generally* ECF 45 at PAGEID ## 239-242.) Instead, Defendant argues that Plaintiff has failed to establish the fourth prong of a reprisal-discrimination claim, specifically that a causal connection existed between the protected activity and the adverse employment action. (*Id.* at PAGEID ## 239-240.) In support, Defendant again cites testimony from Mr. McNutt, Dr. Cooperman, Dr. Bope, and Ms. Park, each stating they did not know of Plaintiff's EEOC activity history prior to any of the actions or events of which Plaintiff complains. (*Id.*, citing McNutt Examination Testimony, ECF No. 45-5, at PAGEID ## 323 (5:5-7); Cooperman Examination Testimony, ECF No. 45-7, at PAGEID # 359 (5:13-16); Bope Examination Testimony, ECF No. 45-6, at PAGEID ## 351-352 (8:19-9:1); Park Examination Testimony, ECF No. 45-8, at PAGEID # 375 (6:17-19).)

17

In addition to this evidence, Defendant affirmatively asserts the "honest belief" defense. (ECF No. 45 at PAGEID ## 240-242.)  Under this defense, "[w]hen an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'"  *Chen v. Dow Chemical Co.*, 580 F.3d 394, 401 (6th Cir. 2009) (quoting *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 713-15 (6th Cir. 2007)).  "An employer holds an 'honest belief' if it 'made a reasonably informed and considered decision' before acting." *Qixin Sun,* 2019 WL 6682158, at *11 (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806–07 (6th Cir. 1998)).  "The decisional process need not have been 'optimal,' nor must the employer have 'left no stone unturned.'"  *Id.* (quoting *Smith*, 155 F.3d at 807).  An employee can overcome the "honest belief rule" by pointing to evidence that "the employer failed to make a reasonably informed and considered decision before taking its adverse employment action." *Id*. (quoting *Smith*, 155 F.3d at 807–808).  However, "an employee's bare assertion that the employer's proffered reason has no basis in fact is insufficient to call an employer's honest belief into question and fails to create a genuine dispute of fact." *Babb v. Maryville Anesthesiologists P.C.,* 942 F.3d 308, 322–23 (6th Cir. 2019) (internal quotation and citation omitted).

In support of the "honest belief" defense, Defendant again points to Mr. McNutt's testimony to establish that Mr. McNutt had nondiscriminatory explanations for the actions and decisions of which Plaintiff complains.  (ECF No. 45 at PAGEID ## 240-241.)  First, as to the January 22, 2015 reprimand, and the related warning on January 5, 2015, Mr. McNutt testified that his decision to reprimand Plaintiff was based on first-hand reports by a Licensed Practical Nurse and a Medical Support Assistant, both of whom were Plaintiff's co-workers.  (*See* McNutt Examination Testimony, ECF No. 45-5, at PAGEID ## 327-328 (9:9-10:17).)  Next, as to Mr.

McNutt's denial of Plaintiff's annual leave request and charge of four hours of AWOL pay, Mr.
McNutt testified that Plaintiff "had given no prior notice that she wanted annual leave"; that Mr.
McNutt "was short staffed" and "would not have authorized annual leave for that day"; and that
Plaintiff "came to work four hours late" that day.  (*Id.* at PAGEID # 330 (12:16-25).)  Finally,
with regard to Plaintiff's three-day suspension, McNutt testified that he relied upon "two reports
of contact from [Medical Support Assistants] and one from a[] [Licensed Practical Nurse] stating
that [Plaintiff] had been rude to this patient."  (*Id.* at PAGEID ## 333 (15:3-7).)  Defendant also
submits that the June 26, 2015 letter to Plaintiff was not an adverse employment action, but
Defendant nevertheless cites additional testimony from Mr. McNutt he had first-hand knowledge
of Plaintiff's failure to follow the instruction cited in the June 26, 2015 letter, because "[he] had
sent an email prior to that" with the subject instruction.  (*Id.* at PAGEID # 340 (20:3-10).)

Once again, Plaintiff has failed to meet her burden as the non-moving party to "designate
specific facts showing that there is a genuine issue for trial."  *Kimble*, 439 F. App'x at 495–96
(internal quotation omitted).  Neither Plaintiff's letter to the Court, ECF No. 51, nor Plaintiff's
"Closing Arguments," ECF No. 55, addresses Plaintiff's allegation of reprisal discrimination,
and neither filing rebuts Defendant's evidence.  Finally, when the issue came up during her
deposition, Plaintiff testified that no one ever told her she was being disciplined because she
previously had filed a complaint.  (*See* Johnson Dep., ECF No. 46-1, at PAGEID ## 444-445
(96:12-97:19).)  In sum, Plaintiff has failed to provide the Court with "proof that the unlawful
retaliation would not have occurred in the absence of the alleged wrongful action or actions of
the employer."  *Ward,* 2020 WL 889159, at *10.

As above, the Court affords Plaintiff all reasonable inferences, and construes the evidence
in the light most favorable to her.  Nevertheless, the unopposed record leaves the Court no

choice.  Plaintiff "has offered nothing" to rebut Defendant's evidence "other than bare denials and her subjective beliefs," both of which are insufficient to survive summary judgment. *Coulter*, 79 F. App'x at 868.  Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's reprisal-discrimination claim.

> ### B.      Plaintiff's Hostile Work Environment Claims.

Title VII also prohibits employers from subjecting an employee to a hostile work environment based on the employee's membership in a protected class.  42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.").  "Title VII is violated when the workplace is permeated with discriminatory behavior that is sufficiently severe or pervasive to create a discriminatorily hostile or abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, syllabus (1993) (internal citation omitted).  "This standard requires an objectively hostile or abusive environment—one that a reasonable person would find hostile or abusive—as well as the victim's subjective perception that the environment is abusive."  *Id.*  "Whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances, which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.*

"A successful hostile-work-environment claim under Title VII requires a plaintiff to establish that (1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on [the protected trait], (4) the harassment was

sufficiently severe or pervasive to alter the conditions of employment and create an abusive

working environment, and (5) the defendant knew or should have known about the harassment

and failed to act." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813–14 (6th Cir. 2013)

(citing *Williams v. CSX Transp. Co.,* 643 F.3d 502, 511 (6th Cir. 2011)). "The Supreme Court

has consistently held that 'simple teasing, offhand comments, and isolated incidents (unless

extremely serious) will not amount to discriminatory changes in the terms and conditions of

employment.'" *Newman v. Fed. Exp. Corp.*, 266 F.3d 401, 405 (6th Cir. 2001) (quoting

*Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998)).

Defendant concedes that Plaintiff has satisfied the first element of a prima facie hostile

work environment claim. (ECF No. 45 at PAGEID # 250.) Defendant maintains, however, that

Plaintiff has failed to demonstrate any of the other four elements of her hostile work environment

claim. (*Id.*) The Court agrees.

As to the second element of a hostile work environment claim, Plaintiff has not

demonstrated that her work environment was objectively hostile or abusive under Title VII.

While Plaintiff uses words such as "badgered," and "harass," *see* Complaint, ECF No. 4, at ¶¶ 4,

11, these words only establish Plaintiff's subjective perception. Plaintiff has not shown that the

treatment was pervasive and frequent; she has not shown that it was severe; she has not shown

that it was physically threatening or humiliating; and she has not shown that it unreasonably

interfered with her work performance. *See Harris*, 510 U.S. 17 at syllabus. Therefore, because

Plaintiff has failed to show that her work environment was objectively hostile or abusive, she has

failed to establish the second element of her hostile work environment claim. *Id.*

Even assuming, *arguendo*, that Plaintiff had sufficiently established the second element

of her hostile work environment claim, she indisputably cannot satisfy the third element, because

Plaintiff has failed to produce any evidence that Mr. McNutt's behavior was based on any of Plaintiff's protected traits. To the contrary, Plaintiff has only confirmed the opposite. As set forth above, Plaintiff testified during her deposition that: (1) Mr. McNutt "never said anything racial" and she never "hear[d] any words disparaging [her] race while [she] was employed" at the VA; (2) she did not believe she was "treated [] differently, because of [her] age," by Mr. McNutt or anyone in the chain of command at the VA; (3) she never "hear[d] anything directed at [her] gender" from her coworkers or anyone in the chain of command at the VA; and (4) no one ever told her she was being disciplined because she had filed a complaint. (*See* Johnson Dep., ECF No. 46-1, at PAGEID ## 444-445 (93:11, 94:21-95:8 (race); 95:9-96:4 (age); 96:5-10 (sex); 96:12-97:19 (prior EEO activity)).) As a result, the Court finds that Plaintiff failed to meet her burden of demonstrating a prima facie case for a hostile work environment under Title VII.

Again, even affording Plaintiff all reasonable inferences, and construing the evidence in the light most favorable to her, the unopposed record leaves the Court no choice. As with her discrimination claims, Plaintiff "has offered nothing" to rebut Defendant's evidence "other than bare denials and her subjective beliefs," both of which are insufficient to survive summary judgment. *Coulter*, 79 F. App'x at 868. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's hostile work environment claim.

Regardless of Plaintiff's subjective beliefs or suspicions as to the reasons behind the actions and events between December 23, 2014 and June 26, 2015, she has failed to raise a genuine issue of material fact as to whether Defendant discriminated against her or subjected her to a hostile work environment in violation of Title VII or the ADEA. As a result, the Court concludes that no jury could reasonably find that Defendant discriminated against her or

22

subjected her to a hostile work environment in violation of Title VII or the ADEA. Accordingly, Defendant's Motion for Summary Judgment is well taken.

Having granted summary judgment to Defendant on each of Plaintiff's claims, the Court need not and does not address Defendant's Motion to Dismiss for Plaintiff's Failure to Prosecute (ECF No. 40), as the Court's decision on summary judgment renders the Motion to Dismiss moot.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 45) is **GRANTED**. The Clerk is **DIRECTED** to enter judgment in favor of Defendant and to terminate this case. Finally, Defendant's Motion to Dismiss for Plaintiff's Failure to Prosecute (ECF No. 40) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**


Date: September 29, 2020                    _____/s/ *Elizabeth A. Preston Deavers*_____
                                            ELIZABETH A. PRESTON DEAVERS
                                            CHIEF UNITED STATES MAGISTRATE JUDGE